# RECORD IMPOUNDED

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4093-24

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

J.L. and C.H.,[1]

     Defendants-Respondents.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF L.G.L.,
a minor.

_____

L.L., a minor,

     Intervenor-Appellant.

_____

APPROVED FOR PUBLICATION

June 30, 2026

APPELLATE DIVISION

Submitted May 27, 2026 – Decided June 30, 2026

Before Judges Susswein, Chase and Augostini.

---

[1] We use initials and pseudonyms to protect the privacy of the family. R. 1:38-3(d)(12).

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FG-13-0022-25.

Jennifer N. Sellitti, Public Defender, Law Guardian, attorney for appellant (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Samantha C. Verwilt, Assistant Deputy Public Defender, of counsel; David B. Valentin, Assistant Deputy Public Defender, of counsel and on the briefs).

Jennifer Davenport, Attorney General, attorney for respondent New Jersey Division of Child Protection and Permanency (Sookie Bae-Park, Assistant Attorney General, of counsel; Meaghan Goulding, Deputy Attorney General, on the brief).

The opinion the court was delivered by

AUGOSTINI, J.A.D.

This appeal raises the question of whether a sibling has a right to intervene in a termination of parental rights proceeding involving another sibling to preserve their bond. L.L. (Leah) appeals from the trial court's June 17, 2025 order denying her right to intervene, finding she had no standing to intervene, and her motion was untimely. The court also denied Leah's motion to stay the guardianship trial involving her sister, L.G.L. (Lexi).[2] Having reviewed the record and governing law, we affirm the trial court's denial of Leah's motion to intervene and stay of the guardianship trial.

---

[2] Pursuant to Rule 2:2-3(b)(10), an order denying a motion for intervention as of right, Rule 4:33-1, is appealable as of right.

## I.

We limit our recitation of the facts to those necessary to resolve the issues raised on appeal. J.L. (Jennifer) is the biological mother of Leah, born May 23, 2016, and Lexi, born November 26, 2022. K.A. (Ken) is Leah's father, and C.H. (Carl) is Lexi's father.

On October 17, 2022, the Division of Child Protection and Permanency (Division) filed for, and the court approved, care and supervision of Leah due to Jennifer's substance abuse and mental health issues. Jennifer was also a victim of domestic violence. At the time, Jennifer was pregnant with Lexi. After Lexi was born, the court denied the Division's request for custody of the children without prejudice, but granted it care and supervision of the children, adding Lexi to the litigation.

On or about January 10, 2023, the children were removed from Jennifer's custody, and the court granted the Division custody of the children, placing them together in an unrelated resource home. The children remained together for approximately nine months after which Lexi was placed with her paternal grandmother. In April 2024, the court approved reunification of Leah with Ken. During the time the children lived apart, the Division facilitated twice-monthly sibling visitation and video chats, and the children's caregivers supported this ongoing contact.

3

On June 25, 2024, the trial court approved a change in Lexi's permanency plan to termination of Jennifer and Carl's parental rights followed by adoption. At the time of Lexi's permanency hearing, she was living with her paternal grandmother, while Leah remained in her father's custody. Both the paternal grandmother and Ken supported ongoing sibling contact.

On August 8, 2024, the Division filed a guardianship complaint for Lexi, dismissing her from the protective service litigation. Leah remained under the Division's care and supervision in a separate protective service case.

The grandmother's health declined, and in November 2024, Lexi was removed from her care and returned to the former resource home. Leah's Law Guardian asserted that the resource parent, unlike her grandmother, opposed post-adoption contact.[3]

On March 10, 2025, the trial court ordered the Division to arrange twice-monthly sibling visitation, regardless of Jennifer's attendance at visits. After Lexi was returned to the former resource home, Leah's Law Guardian retained Dr. Elizabeth Stilwell to conduct a sibling bonding evaluation. Dr. Stilwell concluded that the girls "share a mutually responsive and emotionally protective sibling bond," and opined that "continued, structured contact

---

[3] As the trial court pointed out, the record does not substantiate the Law Guardian's assertion that Lexi's former resource parent opposed post-adoption sibling contact.

A-4093-24

between [the children] is not only appropriate but developmentally essential." Dr. Stilwell also recommended specific interventions "[t]o mitigate harm if the sibling relationship cannot be preserved."

After receiving Dr. Stilwell's report, Leah's Law Guardian filed a motion to intervene as of right, pursuant to Rule 4:33-1, in her sister's guardianship trial. An amended motion was filed, alternatively seeking to add Leah as an interested party or scheduling a plenary hearing on Leah's application. The Division objected, and Lexi took no position on her sister's application. On June 17, 2025, the trial court denied Leah's motion to intervene and request for a plenary hearing, finding that Leah had failed to satisfy the four elements of Rule 4:33-1. The court found no need for a plenary hearing because there was no dispute that "sibling interactions and relationships are appropriate or that the sisters . . . had a relationship and that [it's] in their best interests to continue that relationship." The next day, the court issued an order denying Leah's request for a stay of the guardianship trial pending appeal.

On September 29, 2025, the Division notified the court and the parties that, following the resource parent's request for her removal, Lexi was placed with a new resource family, who promptly began facilitating sibling visits and were committed to continuing contact between the children.

A-4093-24

Leah raises two arguments for our consideration, contending that the trial court erred by: (1) denying her application to intervene as of right pursuant to Rule 4:33-1 in Lexi's guardianship trial; and (2) finding she had no standing to intervene and her application was untimely. After reviewing the record and governing legal principles, we affirm the trial court's denial of Leah's motion to intervene and stay of the guardianship trial.

## II.

### A.

Although we defer to a family court's factual findings "when 'supported by adequate, substantial, credible evidence,'" Roik v. Roik, 477 N.J. Super. 556, 567 (App. Div. 2024) (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)), we review legal issues involving motions to intervene and standing de novo. N.J. Dep't of Env't Prot. v. Exxon Mobil Corp., 453 N.J. Super. 272, 285 (App. Div. 2018) (citing Washington Commons, L.L.C. v. City of Jersey City, 416 N.J. Super. 555, 560 (App. Div. 2010)); Cherokee v. Linden Plan. Bd., 234 N.J. 403, 414-15 (2018). "[T]he trial judge's legal conclusions, and the application of those conclusions to the facts, are subject to our plenary review." Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). "Our review of a trial court's legal conclusions is always de novo."

A-4093-24

Ibid. (citing Dep't of Env't Prot. v. Kafil, 395 N.J. Super. 597, 601 (App. Div. 2007)).

B.

At the outset, we acknowledge, as did the trial court, "the importance of sibling relationships to a child's emotional well-being." In re D.C., 203 N.J. 545, 560 (2010). Indeed, "if sibling bonds are important in healthy families, they are critical to children who experience chaotic circumstances." Id. at 561.

Recognizing the importance of these relationships, our Legislature added siblings to the grandparent visitation statute (GSVS). Ibid. (citing L. 1987, c. 363, § 2; N.J.S.A. 9:2-7.1). Under the GSVS, a sibling seeking visitation over the objection of a parent or guardian must "prove by a preponderance of the evidence that the granting of visitation is in the best interests of the child." N.J.S.A. 9:2-7.1. "Because this standard encroaches upon the fundamental right of parents to make decisions regarding the care, custody[,] and nurturing of their children, the State may intrude only to avoid harm to the child." B.C. v. N.J. Div. of Child Prot. & Permanency, 450 N.J. Super. 197, 208-09 (App. Div. 2017) (citing Moriarty v. Bradt, 177 N.J. 84, 114-15 (2003)). When a parent denies sibling visitation, "to obtain a hearing the [sibling] must make a prima facie case under the augmented standard of Moriarty 'that visitation is necessary to avoid harm to the child.'" Id. at 209 (citations omitted).

A-4093-24

The Child Placement Bill of Rights (CPBR) Act, N.J.S.A. 9:6B-1 to -6, governs sibling relationships when the Division places a child in out of home care.  D.C., 203 N.J. at 562.  More recently, the Siblings' Bill of Rights (SBR), L. 2023, c. 1 §§ 1-3 (codified at N.J.S.A. 9:6B-2.1 to -2.2 and amending N.J.S.A. 9:6B-4), codified in the CPBR includes, among its "twenty-six enumerated rights," several sibling rights aimed at maintaining and fostering sibling relationships while the children remain in out of home care.  N.J. Div. of Child. Prot. & Permanency v. D.P.-Z., 483 N.J. Super. 549, 577 (App. Div. 2026).  Such provisions, for example, include:

> To visit with the child's sibling on a regular basis and to otherwise maintain contact with the child's sibling if the child was separated from his sibling upon placement outside his home, including the provision or arrangement of transportation as necessary, and to have access to a phone number or computer that allows for virtual visits between face-to-face visits or when face-to-face visits are not feasible;
>
> . . . .
>
> To be placed in the closest proximity possible to other siblings who are not in out-of-home placement or if placement together is not possible, when it is in the best interests of the child;
>
> To be allowed to participate in the permanency planning decisions of the child's siblings, whenever appropriate; to invite any other siblings of the child who is the subject of the permanency planning to participate in the permanency planning decision, which other siblings shall be allowed to participate in

the permanency planning decision, whenever appropriate; and to have the recommendations and wishes of the child and of each sibling who participates in the permanency planning decision documented in the case record of the [Division] in the Department of Children and Families and provided to the court, which recommendations and wishes shall be documented in the words written, or otherwise expressed by the child or other sibling, to the extent possible;

. . . .

To be actively involved in the lives of the child's siblings, including planning and attending celebrations, birthdays, holidays, graduations, and other meaningful milestones, to the greatest extent possible;

To not have sibling visits, including phone calls and virtual visits, be denied as a result of behavioral consequences . . . .

[N.J.S.A. 9:6B-4(f), (q), (r), (u), and (v).]

See also D.P.-Z., 483 N.J. Super. at 577-78. "When the Legislature enacted the SBR, it declared the importance of siblings' relationships and provided that prior to adoption '[s]iblings should be supported by the [Department] in their efforts to maintain relationships.'" D.P.-Z., 483 N.J. Super. at 577 (quoting N.J.S.A. 9:6B-2.2(d)). Both the GSVS and the SBR underscore our State's commitment to fostering sibling relationships.

III.

We begin with the threshold issue of whether Leah has standing to intervene in Lexi's guardianship trial. Leah contends the trial court erred by taking a restrictive approach to this issue and finding that she lacked standing to intervene in her sister's guardianship trial. The court found that the law, including the CPBR, does not accord legal standing to Leah in the guardianship litigation.

"[S]tanding is an element of justiciability that cannot be waived or conferred by consent." EnviroFinance Grp., LLC v. Env't Barrier Co., LLC, 440 N.J. Super. 325, 339 (App. Div. 2015) (alteration in original) (quoting In re Adoption of Baby T, 160 N.J. 332, 341 (1999)) (internal quotation marks omitted). "Rather, it is a threshold inquiry because '[a] lack of standing by a plaintiff precludes a court from entertaining any of the substantive issues for determination.'" Ibid. (alteration in original) (quoting Adoption of Baby T, 160 N.J. at 340). "[T]he doctrine focuses on whether a party has a legal entitlement to seek relief from the court." Ibid. (citing Triffin v. Somerset Valley Bank, 343 N.J. Super. 73, 80 (App. Div. 2001)).

Rule 4:26-1 governs standing, which provides "[e]very action may be prosecuted in the name of a real party in interest." Standing requires that "a party must present a sufficient stake in the outcome of the litigation, a real

10

adverseness with respect to the subject matter, and a substantial likelihood that the party will suffer harm in the event of an unfavorable decision." EnviroFinance Grp., LLC, 440 N.J. Super. at 339-40 (quoting In re Camden Cnty., 170 N.J. 439, 449 (2002)) (internal quotation marks omitted).

Generally, courts take a liberal view of standing, and the "threshold to prove a party's standing is 'fairly low.'"  Id. at 340 (quoting Reaves v. Egg Harbor Twp., 277 N.J. Super. 360, 366 (App. Div. 1994)).  However, "standing is not automatic."  Ibid. (quoting Bondi v. Citigroup, Inc., 423 N.J. Super. 377, 436 (App. Div. 2011)).

The polestar of the court's decision in a termination of parental rights case is what resolution of a child's legal status is in his or her best interests. See In re Guardianship of K.H.O., 161 N.J. 337, 348 (1999) (holding "[t]he four criteria enumerated in the best interests standard [of N.J.S.A. 30:4C-15.1(a)] . . . provide a comprehensive standard that identifies a child's best interests").

As the trial court found, Leah does not have standing to present evidence as to what is in Lexi's best interests.  Analogous to the notice and right to be heard provisions regarding resource parents, the rights afforded to children in placement vis-à-vis their siblings do not impart a cognizable legal interest or

standing to intervene in a sibling's guardianship proceeding.  In re Adoption of Child by W.P., 163 N.J. 158, 173 (2000).

Leah contends she has "sufficient stake" in the litigation because she intends to offer critical expert testimony from Dr. Stilwell regarding the sibling relationship.  In support of her standing claim, Leah relies on R.K. v. A.J.B., where the trial court permitted grandparents to intervene and "present relevant evidence" in an adoption hearing to help determine whether adoption was in the child's best interests.  284 N.J. Super. 687, 695 (Ch. Div. 1995).  Leah's reliance on R.K. is misplaced because the court did not find that the grandparents had standing to be heard in the adoption proceeding; instead, the court granted their motion to intervene.  Standing and the right to intervene are two distinct legal principles.

Leah does not have standing simply because she has evidence to present regarding the sibling bond.  As the trial court aptly found, "intervention is not the proper vehicle" for Leah to provide input or evidence regarding the sibling relationship during her sister's termination of parental rights proceeding.  See B.C., 450 N.J. Super. at 207.  Leah's input can be provided through the Division, its record, and Lexi's Law Guardian.  Moreover, Leah has not demonstrated any harm resulting from a lack of standing, particularly because

she can pursue sibling visitation through the GSVS, N.J.S.A. 9:2-7.1, post-adoption.

We hold that Leah has not established "a sufficient stake and real adverseness" with respect to the central issue of the guardianship litigation. Neu v. Planning Bd. of Twp. of Union, 352 N.J. Super. 544, 552 (App. Div. 2002) (quoting In re N.J. Bd. of Pub. Utils., 200 N.J. Super. 544, 556 (App. Div. 1985)) (remaining citations omitted). Thus, we discern no error in the court's conclusion that Leah lacks standing in relation to this litigation.

IV.

Although we affirm the trial court's determination of Leah's lack of standing, for the sake of completeness, we address Leah's contentions regarding intervention. A motion to intervene as of right is governed by Rule 4:33-1.

> Intervention as of right is appropriate where a party not named in the litigation (1) "claims an interest relating to the property or transaction which is the subject of the action," (2) shows she "is so situated that the disposition of the action may as a practical matter impair or impede the ability to protect that interest," (3) demonstrates her "interest is [not] adequately represented by existing parties," and (4) files a "timely" application to intervene.
>
> [N.J. Div. of Youth and Fam. Serv. v. D.P., 422 N.J. Super. 583, 590 (App. Div. 2011) (quoting R. 4:33-1).]

13

A-4093-24

If a movant meets these requirements, then intervention "must be permitted." Ibid. (citations omitted).

Rule 4:33-2 allows for permissive intervention, liberally granted, "if the claim or defense and the main action have a question of law or fact in common." In exercising its discretion, the court "shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Ibid.

In this case, Leah argues intervention should have been granted because she satisfied the requirements of Rule 4:33-1 and her motion was timely. She contends: (1) she has a "real interest" in participating in the guardianship trial of her sister Lexi; (2) the "disposition of the [guardianship case] may impair or impede her ability to protect" her sibling relationship; and (3) her sibling interests "are not and cannot be adequately represented by the existing parties."

As to the first element of Rule 4:33-1, Leah contends that she has a real and "actionable" interest in Lexi's guardianship trial. Leah argues that her interest in her sibling relationship with Lexi is of constitutional dimension because she has a "substantive due process property interest in her sibling relationship." However, the focus of Lexi's guardianship case is her legal relationship with her parents and their fundamental and constitutional right to

raise Lexi free from State intervention. N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605-06 (2007). We are aware of no case law or statutory authority equating parental and sibling rights or declaring that both are cloaked with the same constitutional protections.

Although we recognize the importance of fostering sibling relationships as evidenced by the clear intent of the SBR, we agree with the Division that the focus of the guardianship proceeding is on the rights of Lexi's parents and whether termination of their rights serves Lexi's best interests. N.J.S.A. 30:4C-15.1. "The core inquiry" of the best interests standard under N.J.S.A. 30:4C-15.1 is parental fitness and the parent-child relationship. See N.J. Div. of Child Protect. & Permanency v. D.C.A., 256 N.J. 4, 27 (2023) (citation omitted).

Furthermore, neither the CPBR nor the SBR expressly provide for a right to intervene in a sibling's guardianship matter. The Legislature's failure to include the right of standing and to intervene among these various rights expresses an intent to exclude it. The "doctrine of '[expressio unius est exclusion alterius]' which suggests that the mentioning of one or more things excludes other." Evans v. Atlantic City Bd. of Educ., 404 N.J Super. 87, 92 (App. Div. 2008). Moreover, "[w]ere we to infer such intent absent a clear indication from the Legislature, we would undermine the State's parens patriae

obligation to protect the welfare of children" and provide permanent, defined parent-child relationships. D.C.A., 256 N.J. at 27 (citations omitted). Therefore, Leah's interest in maintaining her sibling relationship with Lexi does not equate with a cognizable legal interest in the termination of parental rights action involving Lexi and her parents.

The second element of Rule 4:33-1 requires Leah to establish that intervention in Lexi's guardianship matter is necessary to protect her interest in maintaining the sibling relationship. The GSVS safeguards the sibling relationship post-adoption by granting siblings the right to petition the court under a non-dissolution (FD) docket for an order compelling sibling visitation and contact over a parent or guardian's objection if it is in the child's best interests. N.J.S.A. 9:2-7.1; D.C., 203 N.J. at 545. The Legislature affirmatively chose the GSVS statute—as opposed to the right to standing and intervention—as a means to pursue enforcement of sibling rights. Cf. DiProspero v. Penn, 183 N.J. 477, 495 (2005) ("The canon of statutory construction, expressio unius est exclusion alterius—expression of one thing suggests the exclusion of another left unmentioned—sheds some light on the interpretative analysis.'")

The record is devoid of evidence demonstrating whether Lexi's current caregivers and prospective adoptive parents will encourage and facilitate the

sibling relationship. If they do not, however, Leah's remedy is to pursue sibling visitation by filing an FD application and proving "by a preponderance of the evidence," that visitation with her sister is in their best interests. N.J.S.A. 9:2-7.1. This right to pursue sibling contact is not extinguished should termination of parental rights be granted. Therefore, intervention in Lexi's guardianship litigation is not necessary to preserve the sibling relationship and avoid the loss of this important bond.

The third element requires Leah to demonstrate that the sibling interests cannot be adequately represented by the existing parties. Leah contends that her specific interest in maintaining a sibling relationship with Lexi cannot be "claimed or defended" by any other party in the guardianship litigation. Although Lexi's primary interest in the guardianship case centers on her permanency needs and best interests, she too has an interest in the sibling relationship. Indeed, at oral argument on Leah's intervention motion, Lexi's Law Guardian advised the court that he intended to "be advocating for continued sibling visits during the pendency of the litigation." There is nothing prohibiting Lexi's Law Guardian from calling Dr. Stilwell to testify as to the children's sibling bond, the importance of the sibling relationship, and her recommendations for how that relationship can be fostered and continued post-adoption. Thus, Leah has not established that sibling interests cannot be

17

adequately represented by the existing parties—particularly Lexi's Law Guardian.

Moreover, in advance of trial, the CPBR provides Leah with the opportunity to participate in Lexi's permanency planning, and relay to the Division her wishes regarding continued sibling contact. N.J.S.A. 9:6B-4(r). As noted by the Division, Leah's participation in permanency planning for Lexi will be documented in the Division's case record, which is likely to be produced and admitted into evidence during the trial. See N.J.S.A. 9:6-8.46(a)(3); N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 347 (2010); N.J. Div. of Child Prot. & Permanency v. N.T., 445 N.J. Super. 478, 495 (App. Div. 2016).

The final element of a motion to intervene is the filing of a "timely" application. D.P., 422 N.J. Super. at 590 (citing R. 4:33-1). The trial court found that the motion to intervene filed "in the waning moments of this litigation" was untimely. In June 2024, the court approved the Division's termination of parental rights plan for Lexi, and nearly one year after the permanency hearing, Leah's Law Guardian filed the motion to intervene. The court concluded that "it would have been prudent for [Leah's law guardian] to [file to] intervene when they first learned of the Division's change of plan to minimize delay and not unfairly prejudice the child."

A-4093-24

The court rejected Leah's argument that the motion was timely because Lexi's placement changed in November 2024 and it was at this point when her then resource parent expressed an unwillingness to facilitate sibling contact, according to Leah's Law Guardian. Nonetheless, the motion to intervene was not filed for another six months. We discern no error in the court's determination that the motion could have been filed sooner and was therefore untimely.

Notably, Leah argues that the motion to intervene only became ripe when the former resource parent expressed an objection to ongoing sibling visitation. According to the Division, Lexi's current resource parents have stated their willingness to facilitate sibling contact, and in fact, have done so. Provided this assertion is verified, it undermines Leah's arguments that intervention is necessary to preserve and protect the sibling relationship.

In sum, we are satisfied based on our de novo review that Leah has not established the requirements of Rule 4:33-1. Moreover, we conclude that the trial court's denial of Leah's motion to intervene was supported by sufficient, credible evidence in the record.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

19

A-4093-24